**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **BENJAMIN WINCEK,** *et al.*, | ) | **CASE NO.   4:07 CV 0490** |
| | ) | |
| Plaintiffs, | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| v. | ) | |
| | ) | |
| **COLUMBIA GAS TRANSMISSION** | ) | **MEMORANDUM OPINION** |
| **CORPORATION,** *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon Defendant's Motion to Dismiss pursuant to F.R.C.P. 12(b)(6). (Dkt. #4). Also before the Court are Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss (Dkt. #10) and Defendant's Reply to Plaintiffs' Memorandum in Opposition (Dkt. #11). For the reasons discussed below, Defendant's Motion to Dismiss is **GRANTED.**

**I.    INTRODUCTION**

Plaintiffs Benjamin and Linda Wincek ("Plaintiffs") assert this action against Defendants Columbia Gas Transmission Corporation ("Defendant") and CSC-Lawyers Incorporating Service ("CSC"), alleging: (1) breach of contract; and (2) unlawful conversion of Plaintiffs' property. Defendant advances the instant Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by reason that the Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

**II. FACTUAL BACKGROUND**

Plaintiffs obtained their interest through an Assignment ("Assignment") of Lease dated January 22, 2002, in which Virginia Slutz assigned to Linda Wincek "all of her right, title and interest in and to a certain agreement of Lease ("Lease") dated January 2, 1924." (Dkt. #1, Compl. ¶ 5). This Lease was originally executed on January 2, 1924, by Simon and Harriet Whan and The Natural Gas Company of West Virginia, granting the latter the right to all oil and gas under the property, and the right to undertake any operations necessary to procure the oil and gas. Under the Lease, the Whans were entitled to a 1/8 part or share of all oil or gas produced from the premises. (Dkt. #1, Compl. ¶ 2).

The Lease was later amended by Raymond and Dallas Whan, successors-in-interest to Simon and Harriet Whan, and Manufacturers Light and Heat Company, successor-in-interest to The Natural Gas Company of West Virginia, through Articles of Agreement ("Articles") dated July 22, 1954. The Articles extended the Lease term for a period of fifty (50) years, and fixed the royalties at Two Hundred Dollars ($200.00) annually per well. (Dkt. #1, Compl. ¶ 3). Columbia later acquired the rights to the Lease through assignment. (Dkt. #4).

Some time thereafter, Raymond and Virginia Slutz jointly acquired the property.[1] Following the dissolution of their marriage, Raymond retained ownership of the property and Virginia retained the royalty interest from the wells on the property pursuant to a Separation Agreement dated August 8, 1975. (Dkt. #1, Compl. ¶ 4). On April 11, 1983, Raymond executed a Warranty Deed ("Deed") conveying the property to James and Linda Forney. (Dkt. #1, Compl. ¶ 1). The Deed contained the following reservation: "Royalties from gas wells on premises are reserved

---

[1] The Complaint lacks any indication as to the date when this event transpired.

by Grantor." (Dkt. #1, Compl. ¶ 1).

Plaintiffs brought the instant action on January 19, 2007, in the Columbiana County Court of Common Pleas. (Dkt. #1). Defendant filed a Motion to Dismiss (Dkt. #4) and Notice of Removal on February 21, 2007, (Dkt. #3) and the action was removed to this Court on February 23, 2007. (Dkt. # 5). On March 20, 2007, Plaintiffs filed a Memorandum in Opposition to Defendant's Motion to Dismiss (Dkt. #10). Defendants filed a Reply to Plaintiffs' Memorandum in Opposition to Dismiss on April 3, 2007. (Dkt. #11).

Plaintiffs allege that they own three (3) gas wells currently operated by Columbia and situated on the subject property. (Dkt. #1). In its Motion to Dismiss, Defendant asserts that Plaintiffs have no surface or mineral rights to the land and thus no legal right to negotiate future leases concerning the use and operation of the wells. (Dkt. #4).

### III.   STANDARD OF REVIEW

A motion brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "may only be granted if it appears beyond doubt that the Plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." Ang v. Proctor & Gamble Co., 932 F.2d 540, 544 (6th Cir. 1991) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "All allegations in the complaint must be taken as true and construed in a light most favorable to the nonmovant." Ang, 932 F.2d at 544. While the court must accept the plaintiff's *factual* allegations as true, "[t]he trial court need not accept as true [a plaintiff's] legal conclusions." See Lewis v. ACB Bus. Servs., 135 F.3d 389, 405 (6th Cir. 1998).

To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim. See Tahfs v. Proctor, 316 F.3d 584,

590 (6th Cir. 2003).

As a preliminary procedural matter, a motion to dismiss should be construed as a motion for summary judgment pursuant to FED. R. CIV. P. 56. Rule 12(b) provides "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b).

Accordingly, FED. R. CIV. P. 12(b) authorizes the Court to treat a motion to dismiss under FED. R. CIV. P. 12(b)(6) as a motion for summary judgment under FED. R. CIV. P. 56 if matters outside the pleadings are presented to the court. Therefore, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion unless the motion is converted to one for summary judgment under FED. R. CIV. P. 56. See generally Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir.1997).

There are, however, exceptions to this general rule. Rule 10(c) of the Federal Rules of Civil Procedure provides, "[a] copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes." FED. R. CIV. P. 10 (c). "Rule 10(c) is permissive, and a plaintiff is under no obligation to attach to his complaint documents upon which his action is based . . . . [h]owever, a defendant may introduce certain pertinent documents if the plaintiff fails to do so." Weiner, 108 F.3d at 89. Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. Weiner, 108 F.3d at 88. Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies. See Nieman v.

NLO, Inc., 108 F.3d 1546, 1554 (6th Cir.1997) (public records); Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1018 (5th Cir.1996) (judicial notice); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1197 (3d Cir.1993)(letter decisions of governmental agencies).

In the instant matter, though the May 12, 2005 Lease Agreement ("Lease Agreement") executed by James M. Forney and Linda Forney was not attached to Plaintiffs' Complaint, Defendant referenced the document in its Rule 12(b)(6) motion. Furthermore, the rights allegedly secured by that Lease Agreement are central to Plaintiffs' claim. Therefore, the Court shall treat Defendants' motion as one for dismissal for failure to state a claim and consider the above-referenced Lease Agreement along with the complaint.

**IV. LAW AND ANALYSIS**

Defendant argues that "the 1983 Warranty Deed by Plaintiff's [sic] predecessor-in-interest reserved only a royalty interest to the extent that such exists." (Dkt. #4). It claims that grantor, Raymond Slutz, did not attempt to sever the subsurface mineral rights from the surface rights at the time of conveyance, and intended only to retain the right to collect future royalty payments. Defendant contends that as Plaintiffs have no possessory interest in either the minerals or the land, Plaintiffs have no legal right to negotiate the terms of future leases with regard to the subject property.

Plaintiffs assert that Defendant's rights expired on July 22, 2004, with the natural termination of the Articles, and maintain that they are entitled to payment for the use of their property.

The language of the 1924 Lease agreement between Simon and Harriet Whan and The

Natural Gas Company of West Virginia granted "all the oil and gas in and under [the property]…for the purpose of operating thereon for said oil and gas…and all other rights and privileges convenient for conducting such operations." (Dkt. #4, Exh. B). The 1954 Articles of Agreement amending this Lease contained additional language granting The Manufacturers Light and Heat Company, successor-in-interest to The Natural Gas Company of West Virginia, the exclusive right "from time to time of drilling additional wells into or employing such wells as may be on said described property and/or using such oil and/or gas strata or sands as may be in and under said land, as it may see fit for the storage of gas of any kind." (Dkt. #4, Exh. C). Pursuant to these Articles, the gas company also agreed "to increase the gas royalty…to the sum of Two Hundred Dollars ($200.00) annually per well." (Dkt. #4, Exh. C).

Although the record does not indicate precisely when Slutz acquired the property, the 1983 Warranty Deed conveying the property to Dean and James Forney contains a covenant by Slutz that "at and until the ensealing of these presents, [Raymond Slutz] was well seized of the…premises, as a good and indefeasible estate in FEE SIMPLE, and ha[d] good right to bargain and sell the same." (Dkt. #4, Exh. A). Slutz retained ownership of the property by virtue of the 1975 Separation Agreement, which further contained language to the effect that "the four gas wells owned by the parties shall continue to be so owned but Virginia Catherine Slutz shall receive the royalties as long as she lives." (Dkt. #4, Exh. D).

Under Ohio law, it is well established that the construction of written contracts and instruments of conveyance is a matter of law. <u>Columbia Gas Transmission Corp. v. Zeigler</u>, 83 Fed. Appx. 26, 29 (6th Cir. 2003); <u>see also Alexander v. Buckeye Pipe Line Co.</u>, 374 N.E.2d 146, 149 (Ohio 1978). "The purpose of contract construction is to discover and effectuate the intent

of the parties. The intent of the parties is presumed to reside in the language they chose to use in their agreement." Graham v. Drydock Coal Co., 667 N.E.2d 949, 950 (Ohio 1996), citing Skivolocki v. East Ohio Gas Co., 313 N.E.2d 374, 375 (Ohio 1974). In arriving at the meaning of any part of the deed, the instrument must be read in its entirety in order to give effect to the intention of the parties. See Stocker & Stitler Inc. v. Metzger, 250 N.E.2d 269, 273 (Ohio App. 1969). If the language of the deed is clear, the parties' intent can be determined without applying rules of construction. See Seringetti Constr. Co. v. Cincinnati, 553 N.E.2d 1371, 1375 (Ohio App. 1988).

The language in the Warranty Deed reserves in the grantor royalties from the gas wells on the premises. Thus, Virginia Slutz was entitled to the Two Hundred Dollar ($200.00) per well annual royalty payment. However, the plain language of the Deed does not reserve in Plaintiffs any interest beyond that of obtaining royalties. The Deed explicitly reserves in the grantor "royalties from gas wells on premises." (Dkt. #1, Compl. ¶ 1). This provision mirrors the specific language used by the grantor in Pure Oil Co. v. Kindall, 156 N.E. 119 (Ohio App. 1927) and Buegel v. Amos, 1984 WL 7725 (Ohio App. 1984) (unreported) to retain only a royalty interest in the oil and gas.

In Pure Oil Co., a deed conveying property subject to an existing gas lease contained language "excepting and reserving to the grantors herein, their heirs and assigns forever, all royalty in the oil, gas and gasoline, produced from wells drilled and now operated" on the property. 156 N.E. at 120. The Court interpreted this provision as reserving a royalty interest only, not any interest in the actual underground minerals. Id. at 122. Similarly, in Buegel, the instrument of conveyance contained the following reservation: "however, the grantors hereof

-7-

reserve to themselves their heirs or assigns the one-half (1/2) part of all Royalty oil and gas underlying said premises." 1984 WL 7725 (Ohio App. 1984). The court construed this language as conferring upon the grantor only a royalty interest, through which he had no right to control the terms of future leases or of oil or gas production. Id.

Conversely, in Bath Township v. Raymond D. Firestone Co., 747 N.E.2d 262 (Ohio App. 2000), the Court interpreted a deed provision "reserving unto Grantor its successors and assigns, all oil and gas rights appurtenant to the property described herein" as reserving to the grantor the entire gas and oil estate. 747 N.E.2d at 267. The court determined that the language "all oil and gas rights" could not be reasonably construed to limit the grantor's rights to a mere royalty interest. Id. Here, the provision in the Deed conveying "royalties from gas wells on premises" does not approach the broad scope of the language of "all oil and gas rights" interpreted by the court in Bath Township to convey more than a mere royalty reservation.

Plaintiffs cite Rayl v. East Ohio Gas Co., 348 N.E.2d 385 (Ohio App. 1973) and Myers v. East Ohio Gas Co., 364 N.E.2d 1369 (Ohio App. 1977) in support of their claim. However, neither case is relevant to Plaintiffs' argument. In Rayl, the court differentiated between a gas storage agreement and an oil and gas lease, finding that the former could become a valid tenancy at will following the expiration of the primary term while the latter could not. 348 N.E.2d at 388, 390. Similarly, the court in Myers, relying on Rayl, determined that a supplemental gas storage agreement held in a tenancy at will was terminable at the will of the lessee. 364 N.E.2d at 1374. As neither of these disputes involved an interest in royalty payments versus interests in the subsurface minerals or surface land, they do not lend credence to Plaintiffs' allegations.

Plaintiffs further allege that the expiration of the fifty (50) year lease term under the Articles

entitles them to the fair and equitable value for the use of the storage wells on the premises, and demand an accounting of all oil and gas produced from the wells. (Dkt #1, Compl. ¶ 5). However, Plaintiffs are not currently, nor have they ever been, in a contract with Defendant for the use of the storage wells. Plaintiffs obtained their interest through an Assignment from Virginia Slutz, whose only interest in the property, pursuant to her Separation Agreement, was that of retaining royalties from the wells. Thus, it was this singular interest in receiving royalties that passed to Plaintiffs through the Assignment.[2] Plaintiffs' interest is merely that of a fixed royalty, payable regardless of the wells' activity, and does not entitle them to an accounting.

Accordingly, even taking all allegations in Plaintiffs' Complaint as true and construing them in a light most favorable to Plaintiffs, Plaintiffs have failed to state a claim for which relief can be granted.

## V. CONCLUSION

For the foregoing reasons, the Court hereby orders that the Defendant's Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) (Dkt. #4) is **GRANTED**. Accordingly, all claims alleged against the Defendant are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

                         **/s/ *Peter C. Economus* – June 27, 2007**
                         **PETER C. ECONOMUS**
                         **UNITED STATES DISTRICT JUDGE**

---

[2] While Plaintiffs' entitlement to royalties is uncontested, nowhere in their Complaint do they allege that these or any other royalties have been withheld by Defendant. On the contrary, it appears that both Defendant and the current property owners have taken steps to honor Plaintiffs' royalty interest. Both parties executed a lease agreement on May 12, 2005, reserving a right in the Plaintiffs to receive the first Six Hundred Dollars ($600.00) in royalties pursuant to the Warranty Deed of April 11, 1983. (Dkt. #10).